IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL JAMES,                         )
                                      )        2:06-cv-967-GEB-DAD
                    Plaintiff,        )
                                      )
     v.                               )        ORDER
                                      )
BOBBIE ROWLANDS; STEVEN TRIPP, and    )
VIVIAN VAUGHT,                        )
                                      )
                    Defendants.       )
_____)

          Defendants Bobbie Rowlands ("Rowlands"), Steven Tripp

("Tripp") and Vivian Vaught ("Vaught") (collectively, "Defendants")

move for summary judgment on Plaintiff Daniel James's claims under 42

U.S.C. § 1983 that Defendants violated his Fourteenth Amendment due

process and equal protection rights.  Plaintiff claims Defendants

violated his constitutional rights by failing to inform him about an

investigation into his daughter's allegations that another individual

had molested her, and temporarily allowing his daughter to reside with

her maternal grandparents.  Plaintiff opposes the motion, moves to

quash it, and to re-open discovery.

FACTUAL BACKGROUND

Plaintiff is the father of C.J., a minor.  (Decl. of Daniel James in Opp'n to Defs.' Mot. for Summ. J. ("Pl. Decl.") ¶ 2.) Plaintiff was never married to C.J.'s mother, Gayle Sherman ("Sherman").  (Dep. of Daniel James ("Pl. Dep.") at 9:1-15.) Plaintiff and Sherman shared joint legal custody of C.J., but Sherman had physical custody of C.J. and Plaintiff had visitation rights two weekends per month.  (<u>See</u> Defs.' Statement of Undisputed Facts ¶¶ 4-5.)

In February 2003, C.J. told her grandmother, Nancy Proano ("Proano"), that her mother's boyfriend's father, Thomas Blair, had molested her.  (Decl. of Nancy Proano in Supp. of Defs.' Mot. for Summ. J. ("Proano Decl.") ¶ 4.)  Proano informed C.J.'s mother and reported the matter to Nevada County Child Protective Services ("CPS").  (<u>Id.</u>)  Rowlands, a CPS social worker, and Tripp, a Nevada County sheriff's deputy, investigated C.J.'s allegation.  (Decl. of Steven Tripp in Supp. of Defs.' Mot. for Summ. J. ("Tripp Decl.") ¶ 2; Decl. of Bobbie Rowlands in Supp. of Defs.' Mot. for Summ. J. ("Rowlands Decl.") ¶¶ 3-9.)  C.J. told Rowlands that Thomas Blair had molested her on multiple occasions when C.J. accompanied her mother and her mother's boyfriend when they visited Thomas Blair at his home. (Rowlands Decl. ¶ 7.)  Rowlands told Sherman that she should not permit C.J. to come into contact with Thomas Blair, and Sherman said she would prevent the contact.  (<u>Id.</u> ¶ 9.)  CPS did not file a juvenile dependency petition to remove C.J. from her mother's custody since Thomas Blair was not a regular member of C.J.'s household. (<u>Id.</u>)  No one informed Plaintiff of C.J.'s allegations or the investigation.  (Pl. Decl. ¶ 9.)

1       Subsequently, criminal charges were filed against Thomas
2  Blair arising from C.J.'s allegations.  (Tripp Decl. ¶ 7.)   In July
3  2003, CPS received a report that C.J. had told her tutor at school
4  that Sherman's boyfriend, Shawn Blair, had hit C.J.  (Rowlands Decl. ¶
5  12.)  On Thursday, September 11, 2003, C.J. told Rowlands that Shawn
6  Blair was pressuring C.J. to change her testimony about being molested
7  by Thomas Blair, and instead testify that Thomas Blair was just
8  wrestling with her.  (Id. ¶¶ 16, 19.)  Rowlands told Sherman that
9  Shawn Blair was pressuring C.J., and they discussed steps Sherman
10 could take to ensure that Shawn Blair did not have access to C.J.
11 (Id. ¶ 20.)  Sherman agreed to allow C.J. to stay with Proano that
12 night so Shawn Blair could not pressure C.J.  (Id.)  Rowlands asked
13 Sherman to call her the next day to inform Rowlands about what
14 arrangements Sherman would make to ensure that Shawn Blair could not
15 pressure C.J. during the duration of Thomas Blair's trial.  (Id.)
16 Sherman failed to call Rowlands the next day as requested.  (Id. ¶
17 21.)  On Friday, September 12, 2003, CPS placed C.J. in Proano's home
18 for the weekend.  (Id.)

19      The following Monday, Rowlands and CPS social worker Vaught
20 again spoke with Sherman about making arrangements to ensure Shawn
21 Blair could not pressure C.J. to change her testimony concerning
22 Thomas Blair.  (Id. ¶ 22.)  Rowlands and Vaught gave Sherman five
23 options to protect C.J. from Shawn's pressure: (1) Sherman could allow
24 C.J. to stay with Proano until Thomas Blair's trial was over without
25 CPS involvement, (2) Sherman could sign a voluntary agreement with CPS
26 placing C.J. with Proano until the trial was over, (3) Sherman could
27 ask Shawn Blair to leave the home, (4) Sherman could sign an agreement
28 with CPS placing C.J. in foster care, or (5) Sherman could allow C.J.

to stay with Plaintiff until the trial was over.  (Id.)  Sherman agreed to allow C.J. to stay with Proano until Thomas Blair's criminal trial was over.  (Decl. of Vivian Vaught in Supp. of Defs.' Mot. for Summ. J. ¶ 3; Rowlands Decl. ¶ 25.)  The trial was scheduled to begin January 21, 2004.  (Rowlands Decl. ¶ 26.)

The parties dispute whether Defendants instructed Proano not to inform Plaintiff about the molestation investigation.  Proano declares that she "was not instructed by any social worker or law enforcement officer with Nevada County to not tell [Plaintiff] that there was an investigation concerning C.J." (Proano Decl. ¶ 5.) However, Plaintiff submits as evidence a declaration Proano filed in state court in which Proano sought grandparent visitation rights and declared she made the "mistake" of not notifying Plaintiff about the investigation, and "this mistake was made after consultation with [CPS] who felt that it was not necessary to advise [Plaintiff] so long as [C.J.] resided with [Proano] pending anticipated prosecution of [Thomas Blair]." (See Pl. Decl., Attachment 6.)  Plaintiff's visitation rights were not interrupted by this placement.  (See Proano Decl. ¶ 11.)

On December 6, 2003, C.J. told Plaintiff about the molestation investigation.  (Pl. Decl. ¶ 9.)  Plaintiff subsequently requested information about the CPS and sheriff's office investigation into C.J.'s molestation, but Tripp and Vaught refused to release any information Plaintiff requested.  (Id. ¶¶ 25, 31.)

On December 11, 2003, Plaintiff filed an ex parte motion in state court through which he obtained temporary custody of C.J.  (Pl. Dep. 26:4-8.) Ultimately the state court awarded physical custody to Proano.  (Proano Decl. ¶ 13.)

1 <u>PLAINTIFF'S MOTIONS FOR DISCOVERY AND TO QUASH</u>

2 On March 20, 2008, Plaintiff moved to "re-open" discovery

3 and to quash Defendants' pending summary judgment motion, contending

4 discovery should be re-opened and Defendants' motion quashed since

5 Defendants failed to comply with a magistrate judge's February 15,

6 2008 order granting Plaintiff's motion to compel discovery.

7 Subsequently, Plaintiff filed an ex parte request to have his March 20

8 motion heard before the date on which Defendants' motion was noticed

9 for hearing.  On March 27, 2008, an order issued denying Plaintiff's

10 ex parte request and informing Plaintiff that if he "believes he has

11 an evidentiary basis for opposing Defendants' summary judgment motion,

12 it may be raised in his opposition to" that motion.  (March 27 Order

13 at 3:2-5.)

14 The essence of Plaintiff's March 20 motion to re-open

15 discovery seeks modification of the Rule 16 Scheduling Order since the

16 discovery completion date prescribed in that order has passed.  <u>See</u>

17 <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 608-09 (9th Cir.

18 1992) (stating even when movant "did *not* specifically request the

19 court to modify its scheduling order," the motion is "a *de facto*

20 motion to amend the scheduling order" if that is the effect of the

21 motion).  Even if this motion is construed as a request for further

22 discovery under Rule 56(f) of the Federal Rules of Civil Procedure,

23 granting the request would still require extending the discovery

24 completion date.  "A scheduling order may be modified only for good

25 cause . . . ."  Fed. R. Civ. P. 16(b)(4).  Plaintiff's motion is

26 denied since Plaintiff has failed to show "good cause" justifies the

27 requested modification.  <u>See</u> <u>Nidds v. Schindler Elevator Corp.</u>, 113

28 F.3d 912, 920-21 (9th Cir. 1997) (holding district court did not abuse

discretion when it denied a Rule 56(f) motion where discovery deadline had passed); In re Imperial Credit Indus., Inc. Sec. Litig., 252 F. Supp. 2d 1005, 1017 (C.D. Cal. 2003) (holding that since the discovery cut-off date had passed, "[t]o grant Plaintiffs' Rule 56(f) request would [] require the Court to . . . modify the scheduling order").

Plaintiff contends Defendants' summary judgment motion should be quashed under Federal Rule of Civil Procedure 37(b)(2)(A)(iii) because Defendants failed to comply with the magistrate judge's February 15 order compelling discovery. That order granted Plaintiff's motion to compel Defendants to serve supplemental responses to Plaintiff's records production request, and to supplement their answers to Plaintiff's interrogatories. Defendants served supplemental records on February 22, 2008 and supplemental interrogatory answers on March 4, 2008. (See Pl.'s Mot. to Re-Open Disc., Attachments A, M, N & L; Decl. of Michael Jamison in Supp. of Defs.' Opp'n to Pl.'s Mot. ("Jamison Decl.") ¶¶ 3-14.) Plaintiff contends these supplementary responses are inadequate, but Plaintiff has failed to show the inadequacy of these supplementary responses.

Plaintiff also contends Defendants' counsel interfered with Plaintiff's subpoenas of records from the Nevada County District Attorney's Office, Nevada County Child Protective Services, Nevada County Health and Human Services, and the Grass Valley Police Department. Defendants' counsel declares in response that he did not interfere with those subpoenas. (See Jamison Decl. ¶¶ 3-14.) Plaintiff has not presented facts showing that Defendants' counsel interfered as he argues.

Accordingly, Plaintiff's motion to quash Defendants' pending summary judgment motion is denied.

<u>DEFENDANTS' SUMMARY JUDGMENT MOTION</u>

<u>I. Substantive Due Process</u>

Defendants seek summary judgment on their qualified immunity defense to Plaintiff's § 1983 Fourteenth Amendment substantive due process claims.  (Mot. at 21:28-23:17.)  Decision on Defendants' qualified immunity defense requires a two-step inquiry:

> First, "[t]aken in the light most favorable to [Plaintiff], do the facts alleged show [Defendants'] conduct violated a constitutional right?" If yes, "the next, sequential step is to ask whether the right was clearly established." 'The relevant, dispositive inquiry" under this second step is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

<u>KRL v. Estate of Moore</u>, 512 F.3d 1184, 1189 (9th Cir. 2008) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001)).

<u>A. Constitutional Violation</u>

Plaintiff contends that his due process rights were violated (1) when Defendants failed to notify Plaintiff about their investigation of C.J.'s allegations that she had been molested, and (2) when Defendants removed C.J. from Sherman's physical custody and ultimately allowed Sherman to agree to place C.J. with Proano, without notifying or involving Plaintiff in those decisions.  (Opp'n at 3:15-24, 8:13-19, 14:6-13; Pl. Decl. ¶ 44.)

Plaintiff argues Defendants' failure to notify him about the molestation investigation and the placement of C.J. with Proano violated his "fundamental right [] to make decisions concerning the care, custody, and control of [his daughter]."  <u>Troxel v. Granville</u>, 530 U.S. 57, 66 (2000).  Even though Sherman had sole physical custody of C.J., Plaintiff and Sherman shared joint legal custody, which is the "right and the responsibility to make the decisions relating to

the health, education, and welfare of a child."  Cal. Fam. Code §
3003.  It is undisputed that Defendants never notified or consulted
Plaintiff about the molestation investigation or the placement
decision concerning his daughter. (Pl. Decl. ¶ 9.)  Further,
Plaintiff has presented evidence that Defendants instructed Proano not
to tell Plaintiff about the investigation.  (See id., Attachment 6.)
Since Defendants failed to inform Plaintiff about the molestation
investigation and placement, and instructed Proano not to inform
Plaintiff, this prevented from Plaintiff making decisions about the
care, custody and control of his daughter.  (See Rowlands Decl. ¶¶ 20-
22.)

          Defendants recognize Plaintiff's interest in making these
decisions, but argue "while a constitutional liberty interest in the
maintenance of the familial relationship exists . . . [this] interest
must be balanced against the interests of the state and, when
conflicting, against the interests of [his daughter]."  (Mot. at 20.)
Defendants imply that by not informing Plaintiff about the
investigation and placement, they were protecting the interest of
Plaintiff's daughter because CPS had previously "substantiated" an
allegation that Plaintiff had physically abused his daughter in 1999.
(Rowlands Decl. ¶ 4; Mot. at 5:3-9.)  But the significance of this
single physical abuse incident has not been shown.  Plaintiff had
visitation rights and joint legal custody of his daughter.  Construing
the facts and reasonable inferences therefrom in the light most
favorable to Plaintiff, Defendants have not shown that their interest
in protecting C.J. justified their failure to communicate with
Plaintiff about the molestation investigation and the placement of
C.J. with Proano.

1      Defendants argue that any interference with Plaintiff's
2  relationship with his daughter was "insubstantial and ephemeral in
3  effect" since Plaintiff presents no evidence that he was prevented
4  from exercising his visitation rights while C.J. was staying with
5  Proano (Mot. at 20:30-31; see Proano Decl. 11), and "did not interfere
6  with [P]laintiff's right to be involved in any decision relating to
7  the minor's health, education or welfare." (Mot. at 21.)  However,
8  even if Plaintiff's visitation with his daughter were not interrupted,
9  the failure to communicate with Plaintiff about the investigation and
10 the placement decision violated Plaintiff's constitutional rights to
11 make decisions about the care, custody and control of his daughter.

12     B. Clearly Established Law

13     Defendants argue they are entitled to qualified immunity
14 from Plaintiff's claims since Plaintiff's right to make decisions
15 concerning the care, custody, and control of his daughter was not
16 clearly established in the specific factual context at issue here.
17 (Mot. at 22:20-23:17.)

18     "Determinations of whether a right is clearly established
19 must be 'undertaken in light of the specific context of the case, not
20 as a broad general proposition.'" Skoog v. County of Clackamas, 469
21 F.3d 1221, 1230 (9th Cir. 2006) (quoting Saucier, 533 U.S. at 201).  A
22 right is clearly established if the "contours of the right [are]
23 sufficiently clear that a reasonable official would understand that
24 what he is doing violates that right." Saucier, 533 U.S. at 201.
25 Where, as here, "the existence of a right or the degree of protection
26 it warrants in a particular context is subject to a balancing test,
27 the right can rarely be considered 'clearly established' at least in
28 the absence of closely corresponding factual and legal precedent."

Devereaux v. Perez, 218 F.3d 1045, 1055 (9th Cir. 2000) (quoting Baker v. Racansky, 887 F.2d 183, 187 (9th Cir. 1989)).

The record reveals Defendants did not inform Plaintiff what they were doing as they endeavored to protect C.J. from a then alleged child molester.  This failure did not foster the parent/child relationship Plaintiff had with his daughter and occurred when Defendants were keeping C.J.'s mother apprised of their concerns. Here, Plaintiff's substantive rights to make decisions concerning the care, custody and control of his daughter were clearly established, since "even if there is no closely analogous case law, a right can be clearly established on the basis of common sense."  Giebel v. Sylvester, 244 F.3d 1182, 1189 (9th Cir. 2001) ("Precedent directly on point is not necessary to demonstrate that a right is clearly established.").

Even though Plaintiff's rights were clearly established, Defendants prevail on their qualified immunity defense if their "mistake as to what the law requires [was] reasonable . . . ." Saucier, 533 U.S. at 205.  The record indicates that Defendants balanced Plaintiff's rights to make decisions about the care, custody and control of his daughter against his daughter's interest and decided not to inform Plaintiff about the investigation and placement decision, on the basis that CPS had "substantiated" a physical abuse allegation against Plaintiff in the past.  Defendants also minimized the impact of the investigation and placement on Plaintiff's rights since Plaintiff's visitation rights were not interrupted.  Further, although Plaintiff presented evidence that Defendants instructed Proano not to tell Plaintiff about the investigation, Plaintiff presented no evidence Defendants instructed his daughter or her mother

1  not to tell Plaintiff about the investigation.  Under these factual
2  circumstances, Defendants have shown they made a reasonable mistake
3  about what the law required.  Therefore, Defendants prevail on their
4  qualified immunity defense.

5  II. Procedural Due Process

6          Defendants seek summary judgment on their qualified immunity
7  defense to Plaintiff's procedural due process claim in which Plaintiff
8  asserts Defendants violated his constitutional rights by failing to
9  follow certain procedures he contends were required by state statute.
10  (Mot. at 21:30-23:17.)  Specifically, Plaintiff argues Defendants
11  violated: (1) California Welfare and Institutions Code sections
12  290.1-290.2, which require social workers to notify a child's parents
13  after filing a dependency petition; (2) California Welfare and
14  Institutions Code section 307.4, which requires a social worker who
15  takes a child into temporary custody to notify the child's "parent";
16  (3) California Welfare and Institutions Code section 11400(p), which
17  defines a "voluntary placement agreement" as an agreement between the
18  social worker agency and a child's "parents"; and (4) various
19  provisions contained in the "California-DSS-Manual-CWS Child Welfare
20  Services Program Intake Regulations Investigation requirements."
21  (Opp'n at 3-14.)  In essence, Plaintiff argues these statutes required
22  Defendants to notify him about the molestation investigation and
23  C.J.'s placement with Proano.  (Id.)

24          To prevail on his procedural due process claim, Plaintiff
25  must show more than a failure to follow a state statutory procedure;
26  he must show he was deprived of "a constitutionally protected liberty
27  or property interest" without due process.  Brewster v. Bd. of Educ.
28  of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998).  A

state statute may create a liberty interest protected by due process, but only when the statute contains "substantive predicates governing official decisionmaking, and [] explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met." Bonin v. Calderon, 59 F.3d 815, 841-42 (9th Cir. 1995) (internal citations and quotations omitted).  In other words, "the state law at issue must provide more than merely procedure; it must protect some substantive end." Id.; see Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) ("The State may choose to require procedures . . . but in making that choice the State does not create an independent substantive right.").

Plaintiff fails to show that the statutes at issue "specify[] [an] outcome that must be reached if the substantive predicates have been met." Bonin, 59 F.3d at 841-42.  Thus, even if those statutes applied to the factual situation at issue and required Defendants to follow certain procedures, "such procedures, standing alone, create no independent substantive entitlements, whose deprivation might trigger application of the Due Process Clause." Sealed v. Sealed, 332 F.3d 51, 57 (2d Cir. 2003); see Forrester v. Bass, 397 F.3d 1047, 1056-57 (8th Cir. 2005) (holding that social workers had not violated plaintiffs' procedural due process rights by failing to follow child abuse investigation procedures, since the procedures did not "mandate the particular substantive outcomes of the required [procedures]"); Weller v. Dep't of Soc. Servs., 901 F.2d 387, 392 (4th Cir. 1990) (holding that social workers did not violate plaintiff's procedural due process right since plaintiff "has no property or liberty interest in the specific [child abuse] investigative procedures which he contends were neglected").

1  Therefore, Plaintiff has failed to demonstrate that his procedural due
2  process rights were violated.

3       Since it has been "determine[d] that the [Defendants']
4  conduct did not violate [Plaintiff's] constitutional right[s], the
5  inquiry is over and the [Defendants are] entitled to qualified
6  immunity." Kennedy v. City of Ridgefield, 439 F.3d 1055, 1060 (9th
7  Cir. 2006). Accordingly, Defendants' motion on this claim is granted.
8  III. Equal Protection

9       Defendants seek summary judgment on Plaintiff's Fourteenth
10 Amendment equal protection claim in which he alleges Defendants
11 treated him differently based on his race. (Mot. at 26:16-29:3.)

12      Under the Equal Protection Clause, "all persons similarly
13 circumstanced shall be treated alike" by governmental entities. F.S.
14 Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920). However,
15 "[t]he Constitution does not require things which are different in
16 fact or opinion to be treated in law as though they were the same."
17 Tigner v. Texas, 310 U.S. 141, 147 (1940). "To succeed on a § 1983
18 equal protection claim, [] [P]laintiff[] must prove that []
19 [D]efendants acted in a discriminatory manner and that the
20 discrimination was intentional." Reese v. Jefferson Sch. Dist. No.
21 14J, 208 F.3d 736, 740 (9th Cir. 2000).

22      Plaintiff contends Defendants racially discriminated against
23 him when they informed Sherman, who is white, about C.J.'s molestation
24 investigation and did not inform Plaintiff, who is African-American.
25 (Opp'n at 12:13-19; Pl. Decl. ¶ 39.) Defendants declare that
26 Plaintiff's race was not a factor in their decision not to notify
27 Plaintiff about the investigation. (Vaught Decl. ¶ 4; Rowlands Decl.
28 ¶ 33; Tripp Decl. ¶ 18.) Although Plaintiff presents evidence that

Defendants knew he was African-American, Plaintiff fails to present
evidence countering Defendants' evidentiary showing that they did not
have discriminatory intent when they failed to inform Plaintiff about
the investigation.  Instead, Plaintiff argues that Proano is "racist"
and that Defendants are "guilty out of association" since they "did
everything [] Proano wanted them to do."  (Pl. Dep. at 87:10-19; Pl.'s
Statement of Facts in Opp'n to Defs.' Mot. for Summ. J. ¶ 38.)  But
Plaintiff's "bare assertions, standing alone, are insufficient to
create a material issue of fact and defeat [Defendants'] motion for
summary judgment." Roche Palo Alto LLC v. Apotex, Inc., 526 F. Supp.
2d 985, 990 (N.D. Cal. 2007); Tovar v. U.S. Postal Serv., 3 F.3d 1271,
1279 (9th Cir. 1993) ("[B]are assertions or unsupported conclusions
are not facts sufficient [to oppose summary judgment].").  Moreover,
Plaintiff has not shown that other "similarly circumstanced" persons
of another race were treated differently; Plaintiff offers no evidence
that other persons who had only joint legal custody over their
children were informed when Defendants investigated allegations of
molestation.  Since Plaintiff has not presented evidence showing
Defendants intentionally discriminated against him, Defendants' motion
is granted on this claim.

CONCLUSION

        For the foregoing reasons, Defendants' motion for summary
///
///
///
///
///
///

1  judgment is granted on each of Plaintiff's claims.[1]  The Clerk shall

2  enter a judgment in favor of Defendants in accordance with this Order.

3          IT IS SO ORDERED.

4  Dated:  June 4, 2008

5

6                                    _____
                                     GARLAND E. BURRELL, JR.

7                                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

28          [1]      Since summary judgment is granted on the merits of Plaintiff's
    § 1983 claims, the issue whether Plaintiff's claim is also barred by the
    statute of limitations need not be reached.